Charles F. Ryan, p. a.  
vs. } No. 83690.  
John Unsworth.

CAPOTOSTO, J. In an action for negligence in the operation of an auto-

mobile the plaintiff recovered a verdict of $800. Both plaintiff and defendant move for a new trial upon the usual grounds. At the hearing the defendant relied solely upon the allegation that the verdict was against the law, and the plaintiff urged the sole ground of inadequacy of damages.

The plaintiff, 17 years old and a student at the East Providence High School, was employed in the defendant's drug store from 3 to 6 and from 6 to 11 P. M. on alternate days. His duties were to wait on customers, other than those having prescriptions, and to run minor errands, such as delivering medicine, a quart or so of ice cream, etc., in the immediate neighborhood. After his hours of employment his time was his own.

Some few days before February 12, 1930, the defendant, through his registered druggist James E. Driscoll, received an order for several gallons of ice cream to be delivered and served at a dance to be held on the evening of that day at Goff's Memorial Hall in Rehoboth. This was the first order of this kind ever received by the defendant. Driscoll, shortly after he had received the order, asked the plaintiff if he would go along and help him. Young Ryan's answer was that he would ask his mother and let him know if she would let him go. He did ask his mother and, having secured her permission, told Driscoll that he could go with him.

On February 12, 1930, the plaintiff's hours were from 3 to 6 P. M. At about 9:30 that evening he met Driscoll, helped him load the ice cream in the defendant's car, and went to Rehoboth, where he assisted Driscoll in various ways. The plaintiff was promised no compensation, and neither received nor expected any.

Driscoll drove the automobile. On the way back, some time after midnight, the plaintiff was seated on the rear seat with the ice cream tubs in front of him and to the right of the driver. At the time the road was icy from frost. As Driscoll approached the intersection of Fall River Avenue and Taunton Pike, the crossing light flashed red. Driscoll applied his brakes, the automobile skidded and it crashed into a telegraph pole.

The plaintiff's principal injuries were a discolored eye, contusions of the face, and a fractured jaw at the cheek bone. The discoloration of the eye and contusions disappeared in due time. The fracture of the jaw was united as a result of a skilful and successful wiring operation by Dr. Charles J. Smith. The plaintiff was unable to take solid food for over four weeks, and incapacitated for two months.

Ryan also claims damages for permanent disfigurement.

Dr. Smith testified that while the fracture was united and the plaintiff could use his jaw as well as before the accident, yet he suffered a permanent injury in that the contour of his right cheek was destroyed; in other words, that his cheek bone was flattened as a result of the injury. Dr. Ghazarian's testimony on this point is to the effect that the plaintiff will always carry a depressed deformity at the place of injury. Both doctors testified that this deformity might possibly be corrected by a delicate operation, but neither considered it advisable owing to the uncertainty of result. Dr. Joseph C. Johnston, who testified for the defendant, said that there was no flattening of the cheek bone, and that the plaintiff had suffered no loss of function nor incurred any deformity as a result of the accident.

In contesting liability, the defendant interposed the defence of negligence on the part of a fellow servant. In his attempt to sustain this rather unusual defence in an accident case, the defendant was practically forced to concede the negligence of the driver of the automobile. His main proposition

was to prove that the plaintiff was a fellow servant of the driver at the time of the accident. Counsel ably but unsuccessfully pressed this claim upon the Court throughout the trial.

The Court then held and believes now that at the time of the occurrence the plaintiff was not a fellow servant of the driver of the automobile. In the Court's opinion Ryan was nothing more than a volunteer; a boy who, in return for some slight service, saw a chance to go to a dance without paying admission. But, this Court can not and does not intend to review its own decisions of law. The rights of the defendant were fully protected whenever the rulings were adverse to his contention. The important point now is that, in order to maintain his position at the trial and on the motion for a new trial to the effect that the plaintiff was barred from recovery by the negligence of a fellow servant, the defendant impliedly, at least, admits the negligence of the driver of the automobile. As a matter of fact, the driver was negligent. In attempting to beat out a crossing light, he overlooked all other existing dangerous conditions and directly caused the accident. Liability is clearly established by the facts and conceded by implication.

The consequences of the accident to the plaintiff were rather serious. While it may be true that there exists no functional impairment of the mouth and jaw, yet there is a noticeable flattening of the cheek bone which the plaintiff will have to carry through life. Ryan is a tall, slender, well built American schoolboy. Although the injury to the right cheek is by no means glaring, yet it has to some extent marred the fair, open countenance of the boy. The sum of $800 is no fair compensation for the injuries which he received.

The Court hesitates as a rule to grant a new trial as to damages only. In this case, however, in view of the clear cut evidence of negligence and the unusual defence interposed, the plaintiff is entitled to a more equitable assessment of damages.

The defendant's motion for a new trial is denied.

The plaintiff's motion for a new trial is granted solely on the question of damages.

For plaintiff: Howard K. Simmons.

For defendant: Clason Brereton and Kingsley.